The Honorable Robert S. Lasnick

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHECK INTO CASH OF
WASHINGTON, INC.,
        Appellant/Cross-Appellee

        v.

RUPANJALI SNOWDEN, a Washington
resident,

        Appellee/Cross-Appellant

_____

AND RELATED CROSS ACTIONS

Case No. C12-1095RSL

On Appeal From the United States Bankruptcy Court
For the District of Washington
_____
CROSS APPELLEE'S OPENING BRIEF
_____

Christina Latta Henry (WA Bar No. 31273)
Seattle Debt Law, LLC
705 Second Ave, Suite 1050
Seattle, WA 98104
Tel: 206.324.6677
Fax: 206.447.0115

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## TABLE OF CONTENTS

CROSS APPELLEE'S OPENING BRIEF ........................................................................................ 1

TABLE OF AUTHORITIES ........................................................................................................ 3

STATEMENT OF THE CASE ..................................................................................................... 5

BASIS OF APPELLATE JURISDICTION ................................................................................. 5

STATEMENT OF ISSUES ......................................................................................................... 6

STANDARD OF REVIEW .......................................................................................................... 7

LEGAL ARGUMENT ................................................................................................................. 12

    A.    The Bankruptcy Court Erred When it Failed to Award Ms. Snowden Attorney Fees for Damages, Following *Johnston vs. Sternberg's* misinterpretation of 11 USC § 362(k). ................................ 13

    B.    The Court Abused its Discretion in Failing to Award Civil Contempt Damages to Ms. Snowden Under 11 USC §105(A) ............................................................................................................. 18

    C.    Even if Applying the *Sternberg* Decision, Attorney's Fees through the Evidentiary Hearing are Actual Damages Due to Ms. Snowden ......................................................................................... 18

    D.    Ms. Snowden is Entitled to All Attorney's Fees Related to the Appeal of the Bankruptcy Court's Judgment Order and Judgment on Remand ........................................................................ 24

CONCLUSION ............................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513 (9th Cir. 1984) ............................................... 7

Bertuccio v. Cal. State Contrs. License Bd. (In re Bertuccio), 2009 Bankr. LEXIS 3302 (N.D. Cal. Oct. 20, 2009) ............................................................................................................................................ 23, 24

Bertuccio v. Cal. State Contrs. License Bd. (In re Bertuccio), 414 B.R. 604 (Bankr. N.D. Cal. 2008) .......... 23

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ............................................................................... 18

*Havelock v. Taxel* (In re Pace), 159 B.R. 890 (9th Cir. BAP 1993) ................................................... 13

*In re Dawson*, 390 F.3d 1139, 1147 (9th Cir. 2004) ...................................................................... 15, 17

*In re Deville*, 280 B.R. 483 (9th Cir. BAP 2002) .......................................................................... 18

*In re Duby v. US*, 451 B.R. 664 (BAP 1st Cir. 2011) ..................................................................... 13

*In re Eskanos*, 309 F.3d 1210 (9th Cir. 2002) .............................................................................. 17

*In re Grine*, 451 B.R. 439 (Bankr.N.D. Ohio 2010) ................................................................ 12, 13, 14

*In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985) ....................................................... 7

*In re Rupanjali Snowden, 422 B.R. 737 (Bank.W.D. Wash 2009)* ................................................... 12

*In re Schwartz-Tallard*, 473 B.R. 340 (9th Cir. BAP 2012) ............................................................ 24

*In re Sharon*, 234 B.R. 676 (1999) ............................................................................................ 14

In re Snowden, 422 B.R. 737 (Bankr. W.D.WA 2009) .................................................................... 20

*In re Victoria Station Inc*, 875 F.2d 1380 (9th Cir. 1989) .................................................................. 7

*In re Walsh*, 219 B.R. 873 (9th Cir. BAP 1998) .......................................................................... 24

In re: Dyer, 322 F.3d 1178 (9th Cir 2003) ............................................................................... 7, 18

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) ............................................................... 18

Sternberg v. Johnston (In re Sternberg), 595 F.3d 937 ........................................................... passim

Sternberg v. Johnston, 582 F.3d 1114 (9th Cir. Ariz. 2009) ............................................. 19, 20, 21, 23

*United States vs. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) .............................................................. 7

Young v. Repine (In re Repine), 536 F.3d 512 (5th Cir. 2008) ........................................................... 24

**Statutes**

11 U.S.C. § 362(k) ............................................................................................................ passim

11 U.S.C. § 549 ...................................................................................................................... 21

11 USC § 105(a) ....................................................................................................................... 5

11 USC §362(b)(11) ........................................................................................................ 10, 12, 16

11 USC §362(k) ...................................................................................................................... 20

28 U.S.C. § 1341 ...................................................................................................................... 6

28 U.S.C. § 157(b) .................................................................................................................... 6

28 U.S.C. § 158(a) .................................................................................................................... 5

**Other Authorities**

Restatement (Second) of Torts §914 (1) (1979) ....................................................................... 17

**Rules**

FRBP 8001(a) ............................................................................................................................... 5

## STATEMENT OF THE CASE

The Court abused its discretion in denying Snowden's attorneys fees and erred by giving an overly restrictive interpretation of authority for the opinion in *Sternberg v. Johnston (In re Sternberg),* 595 F.3d 937, 946 n.3 (9th Cir. 2010), amending *Sternberg v. Johnston (In re Sternberg),* 582 F.3d 1114 (9th Cir. 2009). In *Sternberg*, the Ninth Circuit Court of Appeals distinguished between two categories of attorneys' fees under § 362(k): (1) fees incurred in enforcing the automatic stay and remedying its violation; and (2) fees incurred in an action solely to prove damages.  Ms. Snowden is asking this court to review Sternberg as a misinterpretation of the law.  In accord with the present state of the law, the bankruptcy Court awarded Ms. Snowden attorney fees through May 20, 2009 but denied any further attorney fees even though those fees were necessary to obtain a ruling that Check Into Cash ("CIC") willfully violated the Automatic Stay under 11 U.S.C. § 362(k) and to get a remedy of the stay violation through an evidentiary hearing. In addition, the Court had the authority to award sanctions under 11 U.S.C. §105(a) pursuant to civil contempt power and inherent authority under 11 U.S.C. §105(a). It abused its discretion by denying Snowden attorney fees after May 20, 2009 and by failing to use its civil contempt and  inherent authority under 11 U.S.C. §105(a) to award attorney fees as sanctions.  Ms. Snowden also requests attorney fees for defending all actions related to any appeal stemming from the bankruptcy court judgments.

## BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction to hear appeals from final judgments, orders and decrees of the Western District of Washington U.S. Bankruptcy Court and is authorized pursuant to 28 U.S.C. § 158(a)(1) and FRBP 8001(a). Check Into Cash ("CIC") initially appealed the Court's Judgment re Motion for Sanctions, entered on December 12, 2009 and this Court heard that appeal and cross-appeal under case no.: USDC 10-CV-01947-RSL. Rupanjali Snowden ("Snowden") filed a cross-appeal of the Court's order.  This Court remanded to the Bankruptcy Court for further findings and a final judgment with

additional facts is on re-appeal.  The Bankruptcy Court had jurisdiction over this as a core proceeding under 28 U.S.C. § 1341 and § 157(b)(1) and (b)(2)(A) and (G).

## STATEMENT OF ISSUES

**Issue No. 1** :  Under 11 U.S.C. §362(k), an individual injured by any willful violation of the automatic stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages. In 2010, the Ninth Circuit Court of Appeals reviewed the plain meaning of "actual damages" in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir.), *cert. denied*, 131 S. Ct. 102 (2010), holding that the recovery of attorney fees is limited to those incurred to remedy the stay violation itself, not for the pursuit of damages to correct a legal injury. Did the Ninth Circuit interpretation of 11 U.S.C. §362(k) limiting attorney's fees erroneous?

**Issue No. 2** :    Did the Bankruptcy Court abuse its discretion or erroneously apply the law when it failed to award sanctions pursuant to 11 U.S.C. §105 by not holding Check Into Cash in Contempt nor using its inherent sanction authority to award additional sanctions?

**Issue No. 3** :    Check Into Cash did not remedy the automatic stay violation until after the evidentiary hearing on damages, forcing the Bankruptcy Court to issue an award for limited attorney fees, $575 for the payday loan check, overdraft fees of $370.00 along with damage awards for emotional distress and punitive damages.[1] Since Check Into Cash failed to remedy the stay violation until the end of the evidentiary hearing did the Bankruptcy Court abuse its discretion or erroneously apply the law when it ruled the Debtor was not entitled to attorney fees through the end of the evidentiary hearing?

**Issue No. 4** :    Is Ms. Snowden entitled to attorney's fees for defending any appeal stemming from its Judgment re Sanctions for Stay Violation – Check Into Cash on November 17, 2010?

---

[1] Judgment re Sanctions for Stay Violation – Check Into Cash on November 17, 2010

## **STANDARD OF REVIEW**

**Issue No. 1**: This Court reviews a Bankruptcy Court's attorney's fees decision for an abuse of discretion or erroneous application of the law. *Sternberg v. Johnston,* 595 F.3d 937, 945 (9th Cir. 2010).[2] In determining whether a Bankruptcy Court abused its discretion, the Court reviews whether it applied the correct rule of law. *United States vs. Hinkson*, 585 F.3d 1247, 1962 (9th Cir. 2009). The Court determines whether the application of that rule was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id. (*quoting Anderson v. City of Bessemer City, N.C.,* 470 563, 577 (1985).

**Issue No. 2**: This Court reviews a Bankruptcy Court's decision for a ruling on the decision to impose contempt for an abuse of discretion, and underlying factual findings for clear error. *In re: Dyer,* 322 F.3d 1178, 1191 (9th Cir 2003).

**Issue 3**. This court reviews a bankruptcy court's award of sanctions for an abuse of discretion. Due process challenges are reviewed de novo. *In re Victoria Station Inc*, 875 F.2d 1380, 1382 (9th Cir. 1989).

**Issue 4:** This Court reviews a bankruptcy court's attorney's fees decision for an abuse of discretion or erroneous application of the law. *Sternberg v. Johnston,* 595 F.3d 937, 945 (9th Cir. 2010).[3] In determining whether a bankruptcy court abused its discretion, the court reviews whether it applied the correct rule of law. *United States vs. Hinkson*, 585 F.3d 1247, 1962

---

[2] When this court remanded this case, the bankruptcy court issued a final order with additional factual findings to support the correct legal standard on emotional distress, allowing this court to review the case on this second appeal. Thus, the Debtor has raised a couple of new claims regarding attorney fees that are purely legal questions. It is within the district court's discretion to consider new issues on this appeal even if they were not formally raised in the first appeal to this court in USDC Case No. 2:12-CV-1171-RSL. *See* *In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985)*. Any new issue raised by the Debtor in this cross-appeal does not require the injection of new facts, allowing this court to resolve it even if though it was not raised in the initial appeal. *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 517 (9th Cir. 1984).

[3] When this court remanded this case, the bankruptcy court issued a final order with additional factual findings to support the correct legal standard on emotional distress, allowing this court to review the case on this second appeal. Thus, the Debtor has raised a couple of new claims regarding attorney fees that are purely legal questions. It is within the district court's discretion to consider new issues on this appeal even if they were not formally raised in the first appeal to this court in USDC Case No. 2:12-CV-1171-RSL. *See* *In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985)*. Any new issue raised by the Debtor in this cross-appeal does not require the injection of new facts, allowing this court to resolve it even if though it was not raised in the initial appeal. *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 517 (9th Cir. 1984).

(9th Cir. 2009). The court determines whether the application of that rule was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id. (*quoting Anderson v. City of Bessemer City, N.C.,* 470 563, 577 (1985).

## STATEMENT OF RELEVANT FACTS

**A. Ms. Snowden Sought Relief from the Bankruptcy Court to Alleviate her Insurmountable Financial Problems.**

Ms. Snowden is a low income single mother, residing in Sequim, Washington. ( AR000112-123). She filed Chapter 7 bankruptcy after enduring years of financial hardship. In the years prior to her bankruptcy, Ms. Snowden incurred debts to a number of credit card companies, some of whom eventually filed lawsuits against her. (AR000128). She also owed money to family members and to her educational creditors. ( AR000128. As a result of her financial difficulties, she was forced to take payday loans – among those lenders including Check Into Cash ("CIC"). Ms. Snowden took her final payday loan from CIC on November 15, 2008. (AR000129).  When Ms. Snowden later filed bankruptcy on January 16, 2009, she described her bankruptcy as if, "God [sent] me this dingy…and I see the dingy and I am saved." (AR000167). She felt as if a weight was lifted by the realization that there was a way out of her predicament. (AR000132).

**B. Check into Cash had Actual Knowledge of Ms. Snowden's Bankruptcy Filing through Notice from the Bankruptcy Court of Ms. Snowden's Filing.**

After taking her last payday loan on November 15, 2008, Ms. Snowden notified CIC on November 26, 2008 that she intended to file for Chapter 7 Bankruptcy. Subsequently, she called CIC almost daily to confirm her intentions (ER AR000136 - 140).  CIC confirmed representation with Ms. Snowden's bankruptcy attorney on December 12, 2008, and further confirmed on December 15, 2008 that Ms. Snowden would file bankruptcy either by the end of December 2008 or the beginning of January 2009 (AR00049 and AR0000136).

As a "security" on the payday loan, Ms. Snowden had given CIC a post-dated check—Check No. 2740, which would be cashed on her payday in early December 2008. ( AR000173). After deciding to file bankruptcy, Ms. Snowden asked her local bank to place a stop payment on that check listing CIC as a payee (AR000171 – 172).   CIC knew that Ms. Snowden had placed this stop payment on the check because their internal log from the Sequim Branch Center noted telephone calls to Ms. Snowden's bank on 12/5/2008, 12/19/2008, 12/24/2008, 12/29/2008, and two times on 12/30/2008 confirming that she had indeed placed a stop payment on the check (AR000047 - 53).

The Bankruptcy Court also sent notice to CIC's Sequim branch at 1247 W. Washington St., Sequim, WA 98382-3227 on January 22, 2009 notifying CIC of Ms. Snowden's bankruptcy filing. (AR000022). As such, CIC's claim that it had no actual knowledge of Debtor's bankruptcy filing is disingenuous.

**C.  CIC Intentionally Refused to Cure or Remedy Ms. Snowden Even Though CIC was Aware that Refusal Constituted a Continued Violation of the Automatic Stay.**

Through their own Policies and Procedures manual, CIC was aware that any post-petition efforts to collect on pre-petition debt constituted a violation of the automatic stay (AR 00008 – 9).  In CIC's own testimony, Lauren Hosie, General Counsel for CIC, admitted that CIC "is not entitled to" funds from checks presented after a bankruptcy filing (AR000264 - 266). Likewise, CIC was also aware that Ms. Snowden had placed a stop payment on the check to ensure that CIC could not collect on the debt (AR000047 - 53). Regardless, on February 26, 2009, *41 days after the bankruptcy filing*, CIC chose to deliberately circumvent Ms. Snowden's stop payment and the automatic stay by initiating an electronic funds transfer that did not reference the physical check.

CIC attempted to rationalize its conduct by arguing that the mere cashing of a "check" post-petition is not a stay violation under 11 USC §362(b)(11). However, in light of the fact that the funds transfer did not reference the physical check, CIC's actions could not possibly be construed to fall under that exception.

Thus, as the Court later concluded in its published ruling, CIC willfully collected its pre-petition debt of $575.00 from Ms. Snowden's bank account in violation of the automatic stay, causing her an overdraft of her bank account in the amount of $370.00. However, three months later CIC, through its counsel Ms. Hosie, still would not acknowledge any violation of the automatic stay. (AR000086 – 87). Her e-mail settlement offer to Ms. Snowden's bankruptcy attorney, dated May 20, 2009, was phrased as a "courtesy" from CIC, rather than a remedy of their automatic stay violation. (AR000086 – 87).

Nominally, CIC offered a settlement of $1,445.00, including attorney's fees of $720.00 to cover "what CIC believed to be reasonable." (AR000086 – 87). Implicitly, Ms. Hosie made the total settlement offer of $1,445.00 conditional upon Ms. Snowden dropping any continued litigation regarding damages. As CIC did not independently remit the $575.00 post-dated check or the $370.00 for overdraft fees, it is apparent that CIC had no intention of affirmatively remedying the stay violation as required by law.

CIC's offer required Ms. Snowden to forgo any relief she might be entitled to under 11 U.S.C. §362(k), which included actual damages, punitive damages, and attorney fees.  Understandably, Ms. Snowden refused to accept those terms of settlement. Even after the court made a ruling regarding CIC's willful violation of the automatic stay, CIC made no attempt to affirmatively remedy the stay violation. In fact, CIC did not return any funds to Ms. Snowden until November 2010, more than twenty-one (21) months after CIC took the funds from her bank account, and only after the Court's admonishment and judgment order at the end of the evidentiary hearing. (AR000093 – 94).

CIC has claimed that Ms. Snowden's situation was, "very literally, a one in a million case." It has claimed that in any other situation where a borrower might "slip through the system," CIC's policy is to "immediately return funds to the customer." (AR000266). Yet all of CIC's post-petition conduct points otherwise. CIC did not "immediately return funds" and continued to argue that *no* automatic stay violation had occurred, in direct contrast to its own policy procedures. CIC was aware that its conduct amounted to a violation of the automatic stay and still refused to disgorge funds unless Debtor agreed to forgo her rights to pursue damages which she was entitled.

### D.  CIC's settlement offer was not made in good faith.

Overall, CIC's settlement offer of $1,445.00 was disingenuous, especially since Ms. Hosie was fully aware that there was a blatant violation of the automatic stay. Since Ms. Hosie retrieved Ms. Snowden's file from the Sequim CIC branch and had reviewed the internal log notes, she was aware that Ms. Snowden's file had been charged off to the collections department on or about January 3, 2010. (AR000047 – 53).  Thus, before contacting Ms. Snowden's bankruptcy attorney, she already knew that Ms. Snowden had placed a stop payment on her payday loan check and that she had informed the local Sequim branch of her intention to file bankruptcy by either late December 2009 or early January 2010. Since Ms. Hosie also contacted the collection department and obtained the collection file and notes from their office in Cleveland, TN, she had ostensibly reviewed notations made by a CIC employee named

"Gayatri Patel" on March 14, 2009 - "BK 7 Per Mail 09-10318" - affirmatively acknowledging receipt of something concerning Ms. Snowden's bankruptcy. (AR000054 – 58).  However, in her offer, she claims no knowledge of any letters CIC received prior to the Sanctions Complaint sent in May 2011. (AR000086 – 87).

     In addition, the collection notes state that CIC took $575.00 from Ms. Snowden's bank account via "ACH" on February 26, 2008, not through the presentment of a physical check (AR000056).  Ms. Hosie's knowledge of the ACH transaction combined with her review of the notes from the Sequim CIC branch concerning Ms. Snowden's stop payment on the check prove that Ms. Hosie had actual knowledge of CIC's stay violation.  Her e-mail offer of $1,445.00 in the interest of "customer satisfaction," and any discussion in that e-mail regarding the 11 U.S.C. § 362(b)(11) exception to the automatic stay was made in bad faith.


## **LEGAL ARGUMENT**

     A statutory automatic stay arises upon the filing of a bankruptcy petition under 11 U.S.C. § 362(a) and operates as a stay, applicable to all entities, of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...."  To enforce creditor compliance with the automatic stay, the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).  In order to prevail on a § 362(k) claim, a plaintiff must prove by a preponderance of the evidence that the stay imposed under § 362 was violated, that the violation was committed willfully and that plaintiff was injured by the violation. *In re Grine*, 451 B.R. 439**,** 466 (Bankr.N.D. Ohio 2010).11 U.S.C. § 362(k).  In this case, the Bankruptcy Court already found  CIC's conduct to be a willful violation of the automatic stay on December 10, 2009, leaving only the proper type and amount of damages for appeal.  *In re Rupanjali Snowden*, *422 B.R. 737 (Bank.W.D. Wash 2009).*

**A.  The Bankruptcy Court Erred When it Failed to Award Ms. Snowden Attorney Fees for Damages, Following *Johnston vs. Sternberg's* misinterpretation of 11 USC § 362(k).**

The decision in *Sternberg v. Johnston*, 595 F.3d 937 (9th Cir.2009), petition for cert. filed, Case No.: 09-1525 (June 11, 2010), has been sharply criticized by other courts who have found its analysis unpersuasive.  *In re Duby v. US*, 451 B.R. 664 (BAP 1st Cir. 2011).The Ninth Circuit's search for meaning in Black's Law Dictionary and analogies to state law malpractice and bad faith causes of action not created by any federal statute have left other Courts dumbfounded. *In re Grine*, 451 B.R. 439, 470 (Bankr.N.D. Ohio 2010). Under the plain language of 11 US.C.§ 362(k) "any individual injured by any willful violation of the stay provided by this section *shall* recover actual damages, including costs and attorney's' fees.  Most other Courts have not found any ambiguity in that language.  Duby, v. U.S. 451 B.R. 664, 675 (1st Cir. BAP). In contrast, the Ninth Circuit found the statute language vague, and performed a tortured analysis, holding that attorneys fees are limited to a remedy of the stay violation injury itself, while "a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available under the American Rule." *Sternberg*, 595 F.3d at 948.

As part of the *Sternberg* court's analysis of the code provision, it looked extensively to the legislative history behind the enactment of 11 U.S.C. § 362(k).  *Sternberg*, 595 F.3d at 948.  Significantly, this specific provision of § 362, and indeed § 362 extensively in general, was materially amended by Congress in 2005 in respects not relevant to this case but in ways that can fairly be characterized as creditor-friendly. *In re Grine*, 451 B.R. 439, 470 (Bankr.N.D. Ohio 2010). By that time, the Ninth circuit had already established significant precedent supporting damage awards and attorney fees with such cases, *see*, *e.g. In re Dawson*, 390 F.3d 1139 (9th Cir.2004); *Havelock v. Taxel* (In re Pace), 159 B.R. 890, 900 (9th Cir. BAP 1993), awarding fees for prosecuting then § 362(h) claims and adversary proceedings as "actual damages" against creditor defendants for violation of the automatic stay. *Grine*, 451 B.R. at 470. As the *Grine* case discussed, if Congress thought in 2005 that the established case law and such fee awards misconstrued the plain meaning of its statute, resulting in improper penalties against creditors for

actions in disregard of § 362(a), it had the opportunity to fix the problem by amending § 362(h) to remove any ambiguity or misconception of its expressed intent.It did not.  Id.

Courts also disagree with *Sternberg's* policy rationale that the allowance of attorney's fees under 11 U.S.C. §362(k) for the pursuit of actual damages and in some cases punitive damages, fails to promote the protections of the automatic stay.  S*ternberg* 595 F.3d at 948; *But See In re Sharon*, 234 B.R. 676, 688 (1999) (holding that Section 362(h) should be liberally construed……or the deterrent effect of the damages remedy, and the relief it affords wronged debtors, would be compromised). In particular, the fee shifting provision in § 362(K) serves to protect the rights belonging to persons in difficult circumstances that are not necessarily measured by money alone. *Grine*, 451 B.R. at 470. The effect of eliminating the ability to obtain a reimbursement of attorney fees after the recovery of a damages award is to effectively eliminate the ability for most debtors to obtain any damages, even though Congress intended to allowed them under 11 U.S.C. §362(k).  Without a fee shifting provision, debtors are less likely to pursue vindication of the stay and their clients' rights thereunder, both because their bankrupt clients lack the money to pay hourly fees and when its relatively small sum, making a contingency fee wholly impractical. Id. The Sternberg holding that the right to fees under § 362(k) stops at the courthouse door gives creditors free shots at continuing pre-petition collection activity with little practical fear of financial accountability for their actions and hence little incentive to stop it. Id. A debtor who sustains injury from and seeks the help of counsel to stop automatic stay violations is effectively powerless to make a creditor pay the damages and fees incurred. Whether conduct constitutes a violation is also oftentimes reasonably disputed by the parties, giving debtors' counsel little incentive to litigate the contours of § 362(a) in close cases for the benefit both of any particular debtor as well as for the bankruptcy system as a whole. As one bankruptcy judge in the Ninth Circuit rhetorically asks in likewise noting that "*Sternberg* weakens substantially the effectiveness of the automatic stay," "[w]hat good is it to be entitled to damages and attorneys' fees for a violation of the automatic stay if it costs a debtor much more in unrecoverable fees to recover such damages and recoverable attorney fees? In many, if not most, cases that will likely be the

situation." *In re Bertuccio,* Case No. 04-56255, 2009 Bankr. LEXIS 3302, *22-23 n. 7, 2009 WL 3380605, *7 n. 7 (Bankr.N.D.Cal.Oct.15, 2009).

Yes, the *Sternberg* court relies on the legislative history and analysis from *Dawson* to support its holding to limit attorney fees. *Sternberg*, 595 F.3d at 948. Ironically, the effect of the *Sternberg* ruling would prevent most Debtors from ever obtaining any emotional damages award even though the *Dawson* Court interpreted 11 U.S.C. §362(k) to allow emotional distress damages as "actual damages" under the statute. *Dawson*, 390 F.3d at 1148.In *Dawson*, the Court acknowledges Congress' intention to protect more than a Debtor's financial goals; non-financial goals like the "emotional and psychological toll that a violation of a stay can exact from an individual," are articulated as important policy reasons behind the automatic stay. *Dawson*, 390 F.3d at 1148. When Congress drafted a private right of action for violation of the automatic stay into the bankruptcy code – 11 USC §362(k)[4] - it was written to protect one of the fundamental debtor protections provided by the bankruptcy laws. *In re Dawson*, 390 F.3d 1139, 1147 (9th Cir. 2004). Its purpose was to give the debtor a breathing spell from [their] creditors and stop all collection efforts, all harassment, and all foreclosure actions. *In re Dawson*, 390 F.3d at 1147 (*quoting* from H.R. Rep. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97; *see also* S.Rep. No. 95-989, at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41 (same first paragraph). Congress intended to enforce the automatic stay to allow a debtor a chance to reorganize, or "simply to be relieved of the financial pressures that drove him [or her] into bankruptcy." Id. Unfortunately, without the ability to obtain attorney fees for the pursuit of a damage award allowed under 11 USC §362(k), Debtors and their attorneys are now left without any ability to enforce this code provision.

The case at hand is an example of why the *Sternberg* decision misinterprets 11 U.S.C. §362(k) and does not promote the integrity of the bankruptcy system. Ms. Snowden's damages stem from a $575.00 payday loan transaction, not a lucrative tort case as analogized to in *Sternberg*. *Sternberg*, 595

---

[4] 11 USC 362(k) was formerly known as 11 USC 362(h).

F.3d at 948. Since the case involves a single mother struggling to make ends meet and stop the cycle of revolving payday loans through a Chapter 7 bankruptcy filing, CIC's withdrawal of funds from her bank account caused an unexpected financial loss of over $945.00 - forty-four (44) days after her bankruptcy filing. The effect of their actions caused Ms. Snowden a major financial setback and intense emotional distress, ruining any hope for a "breathing spell," after her bankruptcy filing. In this case, as in most cases, the Debtor and her attorney attempted to remedy the stay without initiating. However, all reasonable efforts to obtain CIC's cooperation in returning Ms. Snowden's funds failed until almost three months later when the Debtor's attorney finally found someone at CIC to respond to the stay violation. Unfortunately, the offer to remedy the stay violation came with strings attached – a settlement offer failed to acknowledge the stay violation and implied the cessation of a pursuit of damages.  Both of which the Debtor was unwilling to accept. Also, due to the nature of the transaction, a $500.00 payday loan, CIC maintained that the withdrawal of funds form Ms. Snowden's bank account post-bankruptcy was an exception to the automatic stay under 11 U.S.C. §362(b)(11), allowing for the presentment of a negotiable instrument without violating the stay. Since CIC failed to acknowledge their willful violation of the stay or that they owed any additional damages to Ms. Snowden, the settlement offer did not constitute a remedy.

Because of her refusal to settle, Ms. Snowden's stay violation remained uncured for over twenty-one (21) months. It was not until after the evidentiary hearing that Ms. Snowden discovered CIC had actual knowledge of the bankruptcy and knew the extent of the willful violation when the initial offer to settle was tendered. Yet, CIC continued litigation for months in bankruptcy court, not allowing the Debtor' a "breathing spell," and thus depriving her of the benefits of the automatic stay. *Sternberg*, 595 F.3d at 948. In this case, Ms. Snowden has no way to pay the ongoing attorney fee obligations, Yet, it was only through her pursuit of litigation that the true nature of CIC's willful violation of the automatic stay was uncovered, ultimately entitling her to both emotional distress and punitive damages.

Ms. Snowden may have won damages, but they are not the type of damages the *Sternberg* court assumes. Automatic Stay violations are rarely large financial damage cases, making the court's analogy to a Tort action misplaced. *Sternberg*, 595 F.3d at 948; *see.e.g.* Restatement (Second) of Torts §914 (1) (1979) (The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation. Thus, the *Sternberg* ruling relies on a false assumption the Debtors will be able to recoup their attorney fees through an award for damages in a way that is similar to personal injury attorneys, and that non-debtors will promptly acknowledge their stay violation. *Sternberg*, 595 F.3d at 948. A party has to acknowledge the bankruptcy filing to follow through with its "affirmative duty" to dismiss a court proceeding, stop all collection actions and/or remedy any stay violations promptly upon actual knowledge of a bankruptcy filing. *In re Eskanos*, 309 F.3d 1210, 1214-15 (9th Cir. 2002). Without a way for Debtors to obtain an award for attorney fees, the pillars of support the *Sternberg* decision relies upon will not remain. When a non-debtor party knowingly continues litigation after they know they have violated the stay and refuses to remedy the violation independently from a settlement the rights of a Debtor to reorganize her finances and maintain a breathing spell after a bankruptcy filing is lost. Id. As the Court in *Dawson* discussed, "the consumer who seeks the relief of a Bankruptcy Court is an individual who is in desperate trouble.... The short term future that [she] faces can literally destroy the basic integrity of [her] household. We believe that this individual is entitled to a focused and compassionate effort on the part of the legal system to alleviate otherwise insurmountable social and economic problems. We believe that relief should be provided with fairness to all concerned but with due regard to the dignity of the consumer as an individual who is in need of help. *Dawson*, 390 F.3d at 1148 (*quoting* H.R. Rep. No. 95-595, at 173, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6134). Failing to awarding attorney fees for all the damages allowed in 11 U.S.C. §362(k) contradicts or at the very least challenges the policy goals of the code provision and also fails to support the integrity of the bankruptcy system.

**B. The Court Abused its Discretion in Failing to Award Civil Contempt Damages to Ms. Snowden Under 11 USC §105(A)**

**I.      Sanctions available under civil contempt.**

The *Sternberg* court limited the ability of a Debtor to obtain attorney fees for the recovery of prosecuting a damages action under 11 U.S.C. § 362(k), but did not limit an award of attorney's fees under the court's civil contempt powers.  *See In re Dyer*, 322 F.3d 1178 (9th Cir.2003). Ms. Snowden as the moving party has the burden of showing by clear and convincing evidence that CIC violated a specific and definite order of the court. *Bennett*, 298 F.3d at 1069.  As stated in Dyer, there can be no doubt that the automatic stay qualifies as a specific and definite court order.  *Dyer,* 322 F.3d at 1191.In determining whether CIC violated the stay, the focus is not on their subjective beliefs or intent in complying with the order, but whether in fact their conduct complied with the order at issue. Id. *See also McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949) (Because civil contempt serves a remedial purpose, "it matters not with what intent the defendant did the prohibited act."). As in 11 U.S.C. § 362(k), a sanctions award is determined by the willfulness of the action. Id.

A willful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. *Dyer*, 322 F.3d 1178 (9th Cir.2003).Section 105(a) authorizes a bankruptcy court to issue any order, process or judgment that is necessary to carry out the provisions of the Bankruptcy Code. In exceptional circumstances, an appellate court may find that awarded sanctions are justified under §105(a) even if the trial court did not award them.  *In re Deville*, 280 B.R. 483, 494-97 (9th Cir. BAP 2002), *aff'd* 341 F.3d 539 (9th Cir. 2004). However, a sanctions award under the court's Section 105(a)powers is used as an alternate power, and is only appropriate when no other statute or Rule applies. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

**C.      Even if Applying the *Sternberg* Decision, Attorney's Fees through the Evidentiary Hearing are Actual Damages Due to Ms. Snowden**

Ms. Snowden may recover all the attorney fees she incurred through a remedy of the automatic stay pursuant to 11 U.S.C. §362(k) because she is entitled to attorney fees as actual damages if incurred to enforce the automatic stay. *Sternberg*,  that are actual damages  and that it precludes the full recovery of her attorneys' fees in this matter.  582 F.3d 1114, 1121 (9th Cir. Ariz. 2009).  However, based on the holding in <u>Sternberg</u>, she contends that she can recover her attorneys' fees for efforts made to "remedy" the stay violation.  Thus, attorneys fees incurred prior to October 8, 2009, the date of this Court's oral ruling that CIC violated the stay under 11 U.S.C. § 362(k) should be included under the statute. <u>Sternberg</u> 582 F.3d at 1124.

In <u>Sternberg</u>, the Ninth Circuit Court of Appeals held that the debtor's

"…actual damages…include the attorney fees incurred in seeking to enforce the automatic stay and to fix the problem caused by the overbroad state court order. *Because Johnston's actual damages under § 362(k)(1) do not include fees incurred in prosecuting the adversary proceeding to obtain damages*, we vacate the amount of the judgment and remand for further proceedings to determine the appropriate amount."

<u>Sternberg</u>, 582 F.3d. at 1124 (emphasis added).   The Court's remand instructions to the district court further clarify its holding:

We remand to the district court with instructions to remand to the bankruptcy court to determine which fees are properly allocable to efforts to enforce the automatic stay…All fees related to *proving [the debtor's] damages* are disallowed per the American Rule. <u>Id.</u>

That is, the Court in <u>Sternberg</u> saw a distinction under § 362(k) between (1) fees incurred in enforcing the stay and remedying its violation, and(2) fees incurred in an action solely to prove damages. <u>See</u> <u>Sternberg</u>, 582 F.3d at 1124 ("…a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available"). It held the debtor was entitled to attorneys' fees for the former, but not the latter. <u>See</u> <u>id.</u> This is a subtle but dispositive distinction in the this case.

If <u>Sternberg</u>'s holding is applied literally, the result is that Ms. Snowden is entitled to attorneys' fees incurred prior to October 8, 2009, because the stay was not "enforced," and CIC's stay violation was not "remedied," until this Court determined that CIC was liable for a stay violation under § 362(k) thus entitling Ms. Snowden to actual damages. <u>In re Snowden</u>, 422 B.R. 737, 744 (Bankr. W.D.WA 2009) ("…CIC intentionally violated the automatic stay. Ms. Snowden is entitled to damages. An evidentiary hearing will be set to determine those damages, as well as any resulting from CIC's repeated post-petition contacts with Ms. Snowden, and whether punitive damages are appropriate").

Prior to October 8, 2009, whether or not CIC's post petition withdrawal constituted a stay violation was an open legal question. In fact, throughout these proceedings, CIC has adamantly denied that it violated the stay. Three months after Ms. Snowden and her attorney alerted CIC to the unauthorized withdrawal of funds and requested the return of the funds, and four months after receiving notice of her bankruptcy filing, CIC had still done nothing to rectify the situation, despite its affirmative duty to conform to the automatic stay. It was only after the filing of this Motion that Ms. Hosie offered to return the $575, and her offer on May 20, 2009 expressly stated, "CIC did not violate the automatic stay by presenting Snowden's check…However, CIC is willing to return these particular funds." (ER AR000086-87). Ms. Hosie also offered reimbursement of $150.00 in overdraft charges—even though the bank statements in Ms. Hosie's possession showed that Ms. Snowden incurred $395 in charges and fees as a direct result of CIC's withdrawal[5] — and a nominal amount of attorneys' fees (ER AR000086-87).

---

[5] The Debtor's bank statements show that, because of the overdraft protection savings account she opened after filing her bankruptcy, she would not have incurred any overdraft fees but for the $575 withdrawal.

CIC's offer on May 20, 2009 constituted nothing more than a voluntary turnover that would have been statutorily required under 11 U.S.C. § 549 regardless of whether the stay was violated.  11 U.S.C. § 549.  An offer to return the funds did not "remedy" the stay violation, nor "enforce" the automatic stay, since CIC denied having any liability under the stay, (ER AR000086-87) and instead based its offer on "company policy" and "customer courtesy."  (ER AR000086-87). ("…as a customer courtesy, CIC would be happy to reimburse Snowden for the 4 overdraft charges she incurred as a direct result of CIC depositing her check") ("Since there was not a violation of the automatic stay, it is CIC's position that Ms. Snowden is not entitled to any attorney fees...[h]owever, in the interest of customer satisfaction, CIC is willing to offer Snowden $720 to cover approximately 3 hours of your time…") (ER AR000086-87). Additionally, the funds were not returned to Ms. Snowden until conclusion of the evidentiary hearing on November 17, 2010 when the Court ordered CIC to cut a check to Ms. Snowden immediately. (CITE)

Moreover, in addition to CIC's postpetition withdrawal of funds, Ms. Hosie's testimony in trial on November 2, 2010 uncovered additional stay violations.  Ms. Hosie admitted that CIC knew that Ms. Snowden had retained counsel and intended to file for bankruptcy (ER AR000378).  She admitted that CIC nonetheless continued to contact Snowden directly, (ER AR000387), and that CIC repeatedly attempted direct contact with Ms. Snowden after her petition was filed, (ER AR000387), even though such calls were clearly in violation of CIC's own collection standards, and of federal and possibly state laws (ER AR000010 - 17).  Her testimony establishes that CIC did not take any affirmative measures to comply with the stay.  Yet even after an investigation of these matters, armed with the knowledge that CIC had committed additional stay violations, CIC chose not to make any further efforts to remedy these stay violations or even to admit they were violations. Instead, in order to enforce the stay and remedy CIC's violations, Ms. Snowden had to seek a ruling of liability from this Court.

Further, significant expenses were incurred to conduct extensive research and briefing to aid this Court in its determination of that liability.  These expenses were not incurred to "prove damages."  They were not incurred in order to use the stay as a "sword."  Sternberg 582 F.3d at 1124.  Rather, they were

incurred to ascertain the extent to which the stay could be used as a "shield" to protect Ms. Snowden from CIC's conduct, and to establish whether future debtors would be shielded from postpetition electronic withdrawals.  See id.

The sequence of events in this case can be compared with those in Sternberg, summarized as follows:

(a)   In January 2001, the debtor's ex-wife asked the State Court to hold the debtor in contempt for nonpayment of spousal support.

(b)   On May 14, 2001, the debtor filed for Chapter 11 bankruptcy protection. On May 17, the State Court conducted a previously scheduled evidentiary hearing on the contempt request.  During the hearing, the debtor disclosed his bankruptcy. It was the first the Court, the debtor's ex-wife, and opposing counsel (Appellant Sternberg) had heard about the debtor's bankruptcy.

(c)   On July 13, 2001, the State Court issued a minute order holding the debtor in violation of the divorce decree and in Contempt of Court, and granted a sizeable judgment.

(d)   In response, the debtor filed for relief in the State Court, but the hearing was set after the date by which he was to pay or go to jail.  The debtor also wrote a letter to Sternberg to inform him he was in violation of the automatic stay and that he needed to take measures to cure the violation.

(e)   The debtor also filed a petition with the State Appeals Court.

(f)   In the meantime, the debtor sought relief from the Bankruptcy Court in two ways: (1) an emergency motion to set aside the minute order, and (2) an adversary proceeding charging the debtor's ex-wife and her attorney with violating the stay.

(g)   On July 31, 2001, on the emergency motion, the Bankruptcy Court concluded the stay had been violated and set aside the State Court order.

(h)   Sometime later, the adversary proceeding for damages went to trial.

Sternberg, 582 F.3d at 1116-18.

Here, as in <u>Sternberg</u>, there was a definitive point in time at which the stay was "enforced": when the Bankruptcy Court ruled that the stay was violated.  <u>Sternberg</u>, 582 F.3d at 1118; <u>Snowden</u>, 422 B.R. at 744.  And there, as here, damages were determined at a subsequent proceeding.  <u>Sternberg</u>, 582 F.3d at 1118; <u>Snowden</u>, 422 B.R. at 744. ("…CIC intentionally violated the automatic stay. Ms. Snowden is entitled to damages. An evidentiary hearing will be set to determine those damages, as well as any resulting from CIC's repeated post-petition contacts with Ms. Snowden, and whether punitive damages are appropriate").  Based on the ruling in <u>Sternberg</u>, the Ms. Swonden is not seeking attorneys' fees for this separate damages proceeding.  <u>Sternberg</u>, 582 F.3d at 1124.

A Ninth Circuit case following <u>Sternberg</u> further demonstrates this temporal distinction.  <u>In re Bertuccio</u>, 414 B.R. 604 (Bankr.N.D. Cal. 2008); <u>damages proceeding atIn re Bertuccio</u>, 2009 Bankr. LEXIS 3302 at *22-23 (N.D. Cal. Oct. 20, 2009).  There, the debtor's contractor's license was suspended prepetition.  <u>Bertuccio</u>, 414 B.R. at 607.  After filing his Chapter 13 petition, the debtor tried to get the licensing board to reinstate the license pursuant to § 362, but was unsuccessful until he initiated a motion for injunction.  <u>Id.</u> at 608-09.  The same day he filed the motion, the board released his license.  <u>Id.</u> at 609.  Two days later, on November 3, 2004, the Bankruptcy Court (unaware that the license was reinstated two days earlier) granted the debtor a temporary restraining order for reinstatement of the license.  <u>Id.</u>  The debtor filed a separate adversary proceeding to obtain damages for the violation.  <u>Id.</u>  In that proceeding, the Bankruptcy Court, following <u>Sternberg</u>, marked a temporal distinction between worked performed *before November 3, 2004* and work performed after that date, and denied the latter based on <u>Sternberg</u>.  <u>Bertuccio</u>, 2009 Bankr. LEXIS 3302 at *29-30 (denying request for attorneys' fees incurred prior to November 3, 2004 on different grounds).

Finally, Ms. Snowden notes that she agrees with the bankruptcy court in <u>Bertuccio</u> that the decision

" …weakens substantially the effectiveness of the automatic stay…What good is it to be entitled to damages and attorneys' fees for a violation of the automatic stay if it costs a debtor much more in unrecoverable attorneys' fees to recover such damages and recoverable attorneys' fees?  In many, if not most, cases that will likely be the situation."

Bertuccio, 2009 Bankr. LEXIS 3302 at *22-23 n. 7.  Furthermore, Ms. Snowden agrees with the court in Bertuccio that Sternberg itself noted that its holding was contrary to prior holdings by the Ninth Circuit BAP and inconsistent with the Fifth Circuit's decision in Young v. Repine (In re Repine), 536 F.3d 512, 522 (5th Cir. 2008), and that it created a circuit split.  Bertuccio, 2009 Bankr. LEXIS 3302 at *21-22, citingSternberg, 582 F.3d at 1124.Sternberg does not preclude Ms. Snowden from recovering attorneys' fees in this matter.  See582 F.3d at 1124.  Rather, it precludes only that portion of the attorneys fees incurred solely to recover damages.  Id.


**D.      Ms. Snowden is Entitled to All Attorney's Fees Related to the Appeal of the Bankruptcy Court's Judgment Order and Judgment on Remand**

Fees and Costs experienced by an injured party in resisting the stay violator's appeal are part of the damages resulting directly from the stay violation. *In re Walsh*, 219 B.R. 873, 878 (9th Cir. BAP 1998). As the Ninth Circuit Bankruptcy Appellate Panel ruled, a Debtor's Appellate Attorney's fees, incurred to ensure the continuity of the stay, and incurred in defending the bankruptcy court's Stay Violation Order on appeal are actual damages under §362(k)(1). *In re Schwartz-Tallard*, 473 B.R. 340, 350 (9th Cir. BAP 2012). Since a Debtor is required to defend the bankruptcy court's decision, not only to protect the award of damages attorney fees awarded enforce a damage award, but the *Schwartz-Tallard* court found that the fees damages stemming from appeal were just as important as damages resulting from the stay violation itself. Id.

Since Ms. Snowden's original judgment and judgment on remand from the bankruptcy court both involved appeals from the same case for orders requiring the payment of remedies for violations of the automatic stay itself – the $575 check, the $370 in over draft fees and the attorney fees incurred to remedy the stay itself, Ms. Snowden, like the Debtors in Schwartz-Tallard should receive her attorney fees associated with those appeals as actual damages. <u>Id.</u>

## **CONCLUSION**

Upon filing her bankruptcy, Ms. Snowden was protected from further action against her creditors by the automatic stay. Despite receiving multiple notices of her bankruptcy proceeding, Check into Cash willfully ignored the automatic stay and electronically cashed funds belonging to Snowden. As such, in its decision the Bankruptcy Court erred in the following ways:

First, did the Bankruptcy Court err in limiting attorney's fees awarded to Ms. Snowden through the evidentiary hearing for damages due to the Ninth Circuit's erroneous interpretation of 11 U.S.C. §362(k) even though the fees for that period were used to enforce and provide remedy for violations of the automatic stay.

Second, did the Bankruptcy Courts abuse their discretion or erroneously apply the law when it failed to award sanctions pursuant to 11 U.S.C. §105 by not holding Check Into Cash in Contempt nor using its inherent sanction authority to award additional sanctions the Bankruptcy Court also erred by failing to use its inherent authority under 11 USC §105(a) to award attorneys fees even though Check into Cash acted in bad faith and with willful misconduct.

Third, did Check Into Cash's failure to remedy the stay violation until the end of the evidentiary hearing allow the Bankruptcy Court to abuse its discretion or erroneously apply the law when it ruled the Debtor was not entitled to attorney fees through the end of the evidentiary hearing

Fourth, should the court award attorney fees for defending the bankruptcy courts on appeal.

As such, Snowden respectfully requests the Court grant Attorney's fees incurred by Ms. Snowden in relation to this matter for the period between May 20, 2009 and October 9, 2009. This request is substantiated through either legal theory listed above.

DATED: September 17, 2012                    SEATTLE DEBT LAW, LLC


                                        By:    /s/ *Christina Latta Henry*____
                                               CHRISTINA LATTA HENRY
                                               Attorney for Rupanjali Snowden